# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Chief Warrant Officer Four ELMER F. HOFFMAN, III**
**United States Army, Appellant**

ARMY 20140172

Headquarters, U.S. Army Maneuver Support Center of Excellence
Jeffery R. Nance, Military Judge (arraignment and trial)
David L. Conn, Military Judge (post-trial)
Lieutenant Colonel Laura J. Calese, Acting Staff Judge Advocate (pretrial)
Colonel Charles T. Kirchmaier, Staff Judge Advocate (recommendation)
Lieutenant Colonel Jay L. Thoman, Acting Staff Judge Advocate (addendum)

For Appellant: Mark C. Prugh, Esquire (argued); Captain Payum Doroodian, JA; Mark C. Prugh, Esquire (on brief); Captain Patrick J. Scudieri, JA[1]; Mark C. Prugh, Esquire (on brief in response to specified issues, reply brief, and supplemental brief).

For Appellee: Captain Cassandra M. Resposo, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Cormac M. Smith, JA; Captain Cassandra M. Resposo, JA (on brief, brief in response to specified issues, and supplemental brief).

27 June 2017

---------------------------------
OPINION OF THE COURT
---------------------------------

WOLFE, Judge:

Chief Warrant Officer Four (CW4) Elmer Hoffman, III, appeals his convictions of several sexual offenses involving four girls, three of whom were his children. A panel sitting as a general court-martial convicted appellant of three

---

[1] Counsel signed only in accordance with this court's Internal Rules of Practice and Procedure, Rule 6.2.

specifications of rape of a child, one specification of abusive sexual contact, and three specifications of indecent acts with a child in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 934 (1994 & Supp. V 2000; 2000 & Supp. III 2004; 2006; 2006 & Supp. III 2010) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of dismissal from the Army and confinement for life (with the possibility of parole).

Appellant assigns numerous errors on appeal. We address several substantial issues.

First, we address when matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) are due at our court. We conclude our rules require they be filed at the same time as appellant's brief.

Second, we address appellant's claim the military judge was biased in his conduct of the trial. We adopt the findings of the military judge who conducted a post-trial Article 39(a), UCMJ, session to consider appellant's claims and we find appellant is not entitled to any relief.

Third, we address the issue of waiver and forfeiture as it relates to *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). Specifically, what happens when the accused repeatedly fails to object and affirmatively states that he has "no objection" to a propensity instruction involving charged conduct. We find, based on the facts of this case and the recent decision by our superior court, appellant waived any error resulting from the improper instruction. *United States v. Swift*, 76 M.J. 210, 2017 CAAF LEXIS 299 at *20 (C.A.A.F. 2017) (when the defense states they have "no objection," then "as a general proposition of law," this "constitutes an affirmative waiver of the right or admission at issue").

Fourth, we address an issue specified by this court of whether an accused's absence from trial is admissible at trial. We hold, as a general rule, such evidence is admissible at trial. However, when evidence of an accused's flight is admitted for the first time during sentencing, it must meet the more narrow requirements of Rule for Courts-Martial [hereinafter R.C.M.] 1001(b). We also hold that the military judge's instructions to the panel did not constitute plain error. *See* UCMJ art. 59(a).

Finally, we address the impropriety of the trial counsel's sentencing argument. R.C.M. 1001(g) states failure to object to an improper argument "waives" any claim of error. Applying the Court of Appeals for the Armed Forces (CAAF)'s recent decision in *United States v. Ahern*, 76 M.J. 194 (C.A.A.F. 2017), we find any error was extinguished.

Appellant personally submitted 106 errors in his *Grostefon* matters, but we only discuss in-depth some of appellant's assignments of error.[2] Ultimately, we affirm the findings and the sentence.

## LAW AND DISCUSSION

### A. Timeliness of Grostefon Matters

The appellate processing of this case fell far short of the ideal. Numerous extensions, late filings, and incomplete filings have resulted in an untimely review. Given the severity of the offenses and sentence, as well as the non-frivolous nature of the errors ultimately brought to the court's attention, we liberally granted appellant's various motions for extensions and to file out of time, and considered untimely submissions. We do not suggest that we erred in doing so. However, it appears part of the problem in this case stemmed from some arguable ambiguity in this court's Internal Rules of Practice and Procedure on when *Grostefon* matters are due to this court. Accordingly, we clarify our rules for future cases.

This case was received by this court on 22 April 2015. On 11 February 2016, we granted appellant his sixth extension to file his brief. Appellant's motion stated this would be the final request for an extension and requested an extension until 17 April 2016. Appellant's brief was filed two days late, on 19 April 2016, without a motion to file out of time.

Appellant's brief stated in a footnote that "[p]ursuant to *Grostefon*, appellant reserves the right [to] personally assert matters at a later date." Appellant cited no authority for his "right" to submit *Grostefon* matters at a later date. On 18 October 2016, appellant filed a motion to extend the time to file *Grostefon* matters until 18 November 2016. The motion stated–without explanation or citation–that *Grostefon* matters were due on 18 October 2016. We nonetheless granted the motion. On 14 November 2016, the government filed their response to appellant's brief.

On 16 November 2016, appellant requested yet another extension in which to file *Grostefon* matters. We initially denied the motion. On 23 January 2017, we received appellant's *Grostefon* matters. We also received a request to file a reply

---

[2] Appellant was a retiree when he was ordered to active duty to face the instant charges. In his first assignment of error, appellant alleges the recall was defective and the court-martial lacked personal jurisdiction to try him on these offenses. Appellant's allegations mirror those we addressed in *United States v. Hennis*, 75 M.J. 796, 803-10 (Army Ct. Crim. App. 2016). For the reasons stated in that opinion, we find the court-martial had jurisdiction over appellant.

brief (which had been due on 21 November 2016) out of time. We granted the motion to file a late reply brief, and, upon additional filings by appellant explaining the cause for the delay in submitting *Grostefon* matters, we also agreed to consider appellant's late *Grostefon* matters. Appellant submitted 106 *Grostefon* issues nearing almost 200 pages.

On 16 February 2017, appellant filed a motion requesting to assign two supplemental errors out of time. We granted the motion.[3]

The issue we clarify today is when *Grostefon* matters are due to this court. Appellant's filings clearly indicate some confusion on the issue. Our Rules of Practice and Procedure [hereinafter A.C.C.A. R.] state that *Grostefon* issues "shall be brought to the Court's attention by footnote or in an Appendix to the Brief on Behalf of Appellant." A.C.C.A. R. 15.3(b). We read the requirement that the matters be "brought to the Court's attention" in the brief as a requirement that the matters be filed *with* the brief. That is, *Grostefon* matters are due at the same time as appellant's brief, and an extension to file the appellant's brief inherently provides for additional time to file *Grostefon* matters.

Here, the *Grostefon* matters were submitted *after* the government filed their brief. Indeed, the *Grostefon* matters were submitted well after the eighteen-month window we are generally accorded to complete appellate review. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Our rules provide government counsel "must examine all *Grostefon* issues and may either address each issue or enter a general opposition." A.C.C.A. R. 15.3(c). Concerning in this case is that some of appellant's *Grostefon* matters are quite substantive and required extensive consideration by the court. While a late filing may be of little consequence when *Grostefon* matters are easily disposed of, late filings are especially problematic when the issues may have merit and when the court would benefit from a government response.

Put differently, we must provide for an appellate process in which meritorious *Grostefon* matters have the opportunity to be tested in an adversarial appellate process with sufficient time for the court to give them due consideration. Since we cannot presume *ex ante* the merits of any *Grostefon* submission, all *Grostefon* matters must, in the absence of unusual circumstances, be submitted in a timely

---

[3] Consideration of the case was also delayed when, on 9 December 2016, we specified two issues for briefing and when, on 31 January 2017, we directed oral argument on four issues. Oral argument was held on 22 March 2017. On 15 March 2017, appellant filed a motion requesting appellate discovery. As we denied the motion for appellate discovery, it did not delay our consideration of the case.

fashion.  Accordingly, under our rules, absent a request for untimely filing demonstrating good cause, any *Grostefon* matters an appellant would like this court to consider are due on the same date as appellant's brief.

### B. Impartiality of the Military Judge

Appellant alleges the military judge was biased against him in that he "unconstitutionally deprived [appellant] of a fair trial."  In our review of the record, we see a trial where the civilian defense counsel often tested the boundaries imposed by the military judge, and where the military judge responded by placing greater and greater limits on the civilian defense counsel.  However, the factual basis of appellant's allegations defy easy summarization.  Even were we to list the multitude of complaints, it would fail to place them within the context of the trial as a whole.

In his briefing on the assigned error, appellant points towards two issues that are apparently of greatest concern.

First, appellant alleges the military judge's "demeanor and manner were so poor in this case, in fact, that they drove a combat veteran [appellant] from justice."  As we discuss in more depth below, CW4 Hoffman left the court-martial without authority after government counsel rested their findings case.  At oral argument, appellant's counsel argued he had anticipated establishing several facts through the testimony of his client.  (In a separate trial–not part of this record of trial–CW4 Hoffman pleaded guilty to being absent without leave.  *United States v. Hoffman*, ARMY 20150691).  We are unconvinced any improper action by the military judge can be labeled as causing CW4 Hoffman to intentionally absent himself from his court-martial.

Second, appellant argues the military judge became "verbally abusive" during a specific Article 39(a), UCMJ, session.  While it is often hard to discern tone when reading a cold transcript, the record provides some support for appellant's claims.  Indeed, the military judge at trial recognized his loss of bearing and apologized shortly thereafter.

Critical to our resolution of this issue, however, is that after the conclusion of appellant's trial, a post-trial Article 39(a), UCMJ, session was directed to consider appellant's concerns.  The hearing was presided over by a different military judge, from a different judicial circuit.  At the hearing, appellant was provided the opportunity to call witnesses and present evidence.  Appellant, who had since been apprehended, was present and testified.

Essentially, we are presented on appeal with the functional equivalent of a hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1969), which investigated appellant's complaints of bias and his request for a mistrial.  In a

twenty-four-page ruling, Judge Conn made detailed findings of fact. Judge Conn's conclusions are not clearly erroneous. "To be clearly erroneous, a decision must strike the court as more than just maybe or probably wrong, it must strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish." *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 726 (8th Cir. 2001). Judge Conn concluded his ruling by addressing the trial as a whole and considering the specific Article 39(a), UCMJ, session discussed above:

> It is clear from reading the transcript of the trial there had been multiple instances where the conduct of both [the CDC] and the Trial Counsel challenged the orderliness and efficiency of the proceedings and tried the patience of the trial judge. It is also clear the judge was angry and frustrated by what he perceived as [the CDC's] attempt to violate his earlier order . . . . However, in reviewing the transcript of both Mrs. [MS's] testimony and the Article 39(a) which followed, as well as listening to the audio recording of those sessions, it is abundantly clear that the military judge did not breach the standards of propriety or act with disqualifying intemperance toward [the CDC].
>
> First, he remonstrated [the CDC] outside the presence of the members (unlike the trial counsel). Second, to the extent he was intemperate toward [the CDC], he almost immediately and very sincerely apologized for any offense. Third, examining the record as a whole, including numerous other exchanges with [the CDC] and the entire record of the military judge's rulings on evidentiary matters, motions and objections, he was even-handed, well-reasoned and fair.
>
> [. . .]
>
> The trial judge's rulings and his conduct was a thoroughly understandable and legitimate reaction to [the CDC's] professional conduct as an advocate, which would, in my estimation from review of the entire record and the motion at hand, test the temperance of the most phlegmatic jurist.

We do not find Judge Conn's findings to be clearly erroneous. While we do not necessarily agree with every decision the trial judge made–as judges are

provided discretion, rare would be the case where we would–we do not disagree with Judge Conn's ultimate conclusion that appellant is not entitled to relief.[4]

### C. Propensity & United States v. Hills

Prior to the panel deliberating on findings, the military judge gave the panel a Military Rule of Evidence [hereinafter Mil. R. Evid.] 414 propensity instruction based on charged misconduct. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para 7-13-1 (10 Sep. 2014). In light of *Hills*, appellant asks us to set aside all the findings.

The appellate reverberations of *Hills* are still playing themselves out. We have issued several opinions applying our understanding of *Hills* to different facts. *See United States v. Guardado*, 75 M.J. 889 (Army Ct. Crim. App. 2016) (*pet. granted*, 76 M.J. 166 (C.A.A.F. 2016)) (interpreting *Hills* and finding it bars propensity instructions for charged offenses); *United States v. Williams*, ARMY 20130582, 2017 CCA LEXIS 24 (Army Ct. Crim. App. 12 Jan. 2017) (finding no prejudice when propensity evidence was only allowed from an offense that was first proven beyond a reasonable doubt); *United States v. Hukill*, ARMY 20140939, 2016 CCA LEXIS 505 (Army Ct. Crim. App. 16 Aug. 2016) (applying *Hills* to a case tried by a military judge alone) (*rev'd by United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017); *United States v. Gaddy*, 2017 CCA LEXIS 179 (Army Ct. Crim. App. 20 Mar. 2017) (using permissible propensity evidence from appellant's guilty pleas to establish guilt in contested specification). We have found the instructional error to be both prejudicial and harmless. *Compare United States v. Bonilla*, 2016 CCA LEXIS 590 (Army Ct. Crim. App. 30 Sep. 2016), *pet. denied*, 2017 CAAF LEXIS

---

[4] The same attorney represented appellant at trial and on appeal. In an assignment of error we do not directly address, appellant alleges President Obama ordered "American soldiers to follow his political agenda." Appellant then compared President Obama to Adolf Hitler and included in appellant's brief a translation of the oath taken by Wehrmacht soldiers pledging allegiance to the Führer. In the brief's opening statement of the case, counsel further states the allegations of child sexual abuse "should have been the exclusive province of a divorce court in California" and the charges represent "garden variety allegations seen in divorce case after divorce case throughout America." Appellant's counsel then claims everyone in the Army, including "the military judges, the military defense counsel, the active duty psychologist ostensibly appointed to the defense, the court reporter, the [Article 32, UCMJ, hearing officer], the appellate counsel, and the active duty appellate judges" all "had a vested interest in [appellant] being convicted." We decline to find unlawful command influence in such a structural manner as defense counsel suggests.

352 (C.A.A.F. 3 May 2017); *United States v. Harris*, 2017 CCA LEXIS 129 (Army Ct. Crim. App. 28 Feb. 2017); *United States v. Thompson*, 2017 CCA LEXIS 7 (Army Ct. Crim. App. 6 Jan. 2017); *United States v. Reynolds*, 2017 CCA LEXIS 5 (Army Ct. Crim. App. 5 Jan. 2017); *United States v. Hazelbower,* 2016 CCA LEXIS 605 (Army Ct. Crim. App. 12 Oct. 2016) *with United States v. Grant*, ARMY 20150572, 2017 CCA LEXIS 357 (Army Ct. Crim. App. 25 May 2017); *United States v. Duarte*, 2017 CCA LEXIS 61 (Army Ct. Crim. App. 30 Jan. 2017); *United States v. Adams*, 2017 CCA LEXIS 6 (Army Ct. Crim. App. 6 Jan. 2017). On at least one occasion, we have found the evidence harmless as to one specification, but not as to others. *United States v. Moore*, ARMY 20140875, 2017 CCA LEXIS 191 (Army Ct. Crim. App. 23 Mar. 2017), *pet. granted*, 76 M.J. ___ (C.A.A.F. 22 June 2017) (order).

Here, however, we decide an issue we have not previously directly addressed: What happens when the appellant waives and/or forfeits the error by not objecting to the Mil. R. Evid. 414 instruction at trial?

### *1. Waiver and Forfeiture*

We first address whether appellant's repeated lack of objections to the Mil. R. Evid. 414 instructions, especially in light of the occasional specific invitation to object, constituted waiver or forfeiture of the issue.

The *Manual for Courts-Martial*, *United States* (2012 ed.) [hereinafter *MCM*] uses the term "waiver" in two significantly different ways. At times, the *MCM* "uses the word 'waiver' but actually means 'forfeiture.'" *Ahern*, 76 M.J. at 197. When a rule provides for "waiver" but only "in the absence of plain error," the effect of the rule is "forfeiture." *Id.* However, when the waiver does not contain a "plain error" condition, then the lack of objection "waives" or extinguishes the issue on appeal. *Id.*[5]

R.C.M. 920(f) states "[f]ailure to object to an instruction . . . before the members close to deliberate constitutes waiver of the objection in the absence of plain error." As the CAAF recently stated in *United States v. Davis*, 76 M.J. 224, 2017 CAAF LEXIS 407 at *9 (C.A.A.F. 2017), "[I]f the accused fails to preserve the

---

[5] In general, a waived error is extinguished and cannot be raised on appeal. However, in light of our authority to notice waived and forfeited errors under Article 66(c), UCMJ, we do not view counsel as being prohibited from raising waived or forfeited issues to our attention. Indeed, since we must review the entire record to determine whether to notice waived and forfeited issues, we can only benefit from the views of the parties.

instructional error by an adequate objection or request, we test for plain error.") (citing R.C.M. 920(f); *Johnson v. United States*, 520 U.S. 461, 468–69 (1997) (reviewing instructional error for "plain error" where no objection was made at trial); *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011); *see also Henderson v. United States*, 568 U.S. 266, 133 S. Ct. 1121, 1126 (2013) (reaffirming the principle any right may be forfeited by failing to timely assert it); *cf. United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011) (constitutional rights can be forfeited)). Finally, the Supreme Court recently determined constitutional error, even when structural error, can be forfeited and waived. *Weaver v. Massachusetts*, No. 16-240, slip. op. at 18-19 (U.S. June 22, 2017).

Applying *Ahern* to R.C.M. 920(f), we read the rule as follows: "[f]ailure to object to an instruction . . . before the members close to deliberate constitutes [forfeiture] of the objection."

Of course, an accused may still *waive* instructional error. Our superior court has stated "waiver must be established 'by affirmative action of the accused's counsel,' and not by 'a mere failure to object to erroneous instructions or to request proper instructions.'" *United States v. Smith*, 50 M.J. 451, 455-56 (C.A.A.F. 1999) (quoting *United States v. Mundy*, 2 U.S.C.M.A. 500, 503-04, 9 C.M.R. 130, 132-34 (1953)). "[T]here are no magic words to establish affirmative waiver." *United States v. Gutierrez*, 64 M.J. 374, 376-77 (C.A.A.F. 2007) (citing *Smith*, 50 M.J. at 456). In making waiver determinations, we look to the record to see if the statements signify that there was a "purposeful decision" at play. *Gutierrez*, 64 M.J. at 377.

The CAAF has recently stated "as a general proposition of law, [a statement of] 'no objection' constitutes an affirmative waiver of the right or admission at issue." *Swift*, 76 M.J. 210, 2017 CAAF LEXIS 299 at *20 (citing *United States v. Campos*, 67 M.J. 330, 332–33 (C.A.A.F. 2009)). "[W]here, as here, an accused states he has "no objection" to the admission of a confession at trial, he has waived his right to complain on appeal . . . ." *Swift*, 2017 CAAF LEXIS 299 at *3.

In other words a statement of "no objection" is fundamentally different than silence or the failure to object. A statement of "no objection" is an "affirmative action" that can establish waiver. In taking this affirmative action, counsel is either competent and has made a reasoned decision or counsel is stating he or she has no objection negligently or for some other reason. Absent evidence to the contrary, we presume that counsel are competent under *Strickland v. Washington*, 466 U.S. 668, 690 (1984), thus defense counsel stating that he or she has "no objection" is a purposeful decision.

A defense attorney who states he or she has "no objection," "will nearly always waive any potential objection." *United States v. Natale*, 719 F.3d 719, 729-

30 (7th Cir. 2013). This appears to be in accord with most other federal circuit courts, which treat a statement of "no objection" as waiving (versus forfeiting) instructional error.

Consider the Fourth Circuit's analysis in *United States v. Smith*:

> Because Smith's counsel did not object to the instructions after they were given to the jury . . . we must determine if the error has been forfeited or waived. If forfeited, we review for plain error. If the error has been waived, it is not subject to appellate review. Here, Smith's counsel had an opportunity to object to the jury instructions to correct any error or to preserve the issue for appeal, *and he stated he had no objection*. We find that such an "intentional relinquishment or abandonment of a known right" waives any error based on the jury instructions.

No. 97-4904, 1998 U.S. App. LEXIS 22673, at *3-4 (4th Cir. Sep. 16, 1998) (emphasis added); *see also United States v. Handy*, 592 F. App'x 893, 910 n.13 (11th Cir. 2015) ("Handy waived any right to a limiting instruction by affirmatively stating during the charge conference that she had no objection to the district court's suggestion not to give a Rule 404(b) instruction."); *United States v. Kirklin*, 727 F.3d 711, 716 (7th Cir. 2013) ("[H]is attorney stated that he had no objections to the final instructions before they were read to the jury. We have cautioned before that '[c]ounsel's affirmative statement that he had no objection to the proposed [jury] instruction constitutes waiver of the ability to raise this claim on appeal.'"); *United States v. Murry*, 395 F.3d 712, 717 (7th Cir. 2005) ("Murry's lawyer clearly and affirmatively stated that he had no objection to the jury instructions. Any objection was therefore waived and appellate review is precluded."); *United States v. Watkins*, No. 02-50801 Conference Calendar, 2003 U.S. App. LEXIS 29147, at *1 (5th Cir. June 24, 2003) ("The record reflects that Watkins' counsel waived this issue by advising the district court that he had no objection. . . ."); *United States v. Wall*, 349 F.3d 18, 24 (1st Cir. 2003) ("Indeed, at a sidebar conference held after the jury charge, counsel twice confirmed upon inquiry from the judge that he had 'no objection and no additional requests.' . . . appellant waived any right to object to them on appeal."); *United States v. Smith*, 891 F.2d 703, 709 (9th Cir. 1989) ("There was, however, no objection to the instruction. The error was waived, unless manifest. It was not manifest."); *United States v. Byrd*, 542 F.2d 1026, 1028 (8th Cir. 1976) ("Where, by failing to object after the charge is given, a party does not give the trial court a fair opportunity to correct the questioned instructions, that party is foreclosed by Rule 30 from raising the issue on appeal.").

Thus, an appellant's statement of "no objection" to the instructions is a "purposeful decision" and waiver will apply. *Gutierrez*, 64 M.J. at 377. This is at

least true in circumstances where appellant "was fully aware of the [issue], and he had numerous opportunities to contest its admission and use." *Swift*, 76 M.J. 210, 2017 CAAF LEXIS 299, at *20.

In the present case, the proposed Mil. R. Evid. 414 instructions were discussed several times. Appellant never objected to the government's notice of using charged offenses for Mil. R. Evid. 414 purposes and ultimately stated he had "no objection" to the military judge's instructions.

Prior to trial, the government provided notice under Mil. R. Evid. 414 of *both* charged and uncharged sexual misconduct. Appellant filed a motion in limine to exclude the government's evidence. Crucially, appellant's motion directly addressed only the government's notice of *uncharged* misconduct.[6] At an Article 39(a), UCMJ, motions session, the military judge offered appellant a chance to argue his motion. Appellant's counsel stated "I believe we will stand with our motion in limine as written." The military judge issued a written ruling granting the defense's motion in part and excluding some of the uncharged misconduct provided in the government's Mil. R. Evid. 414 notice. As there was no objection, the military judge's ruling did not directly address the charged misconduct.

During an Article 39(a), UCMJ, session, the military judge specifically advised appellant of his intent to instruct the panel that "I'm going to give the 413 [sic 414] uncharged misconduct and charged misconduct instruction." When offered a chance to object, appellant requested an instruction on Mil. R. Evid. 404(b) and adultery, but did not object to the Mil. R. Evid. 414 instruction. At a third Article 39(a), UCMJ, session, the military judge again repeated his intent to instruct the members on the permissible uses of propensity inferences stemming from charged misconduct and specifically articulated a Mil. R. Evid. 403 balancing test. Again, appellant did not object to the instruction.

The military judge then instructed the members. For all substantive purposes, the instruction given by the military judge was the same as the one in *Hills*. The military judge asked if appellant objected to the instruction. Appellant's counsel responded, "No, Your Honor." The military judge then asked if appellant requested any additional instruction, appellant's counsel again stated, "No, Your Honor."

Accordingly, we must decide whether appellant's repeated failure to object— and statement of no objection—constituted waiver or only forfeiture. Importantly, it was not merely an instance where the military judge instructed the panel and

---

[6] The uncharged misconduct generally involved allegations by the same victims as the charged offenses but for which the statute of limitations had expired.

appellant failed to lodge an objection. Rather, there were at least three different Article 39(a), UCMJ, sessions in which the proposed Mil. R. Evid. 414 instructions were discussed. Furthermore, appellant lodged a written motion objecting to the government's Mil. R. Evid. 414 notice on *uncharged* conduct without objecting to the notice given on the *charged* conduct. This weighs heavily towards finding a "purposeful" decision.

However, most controlling is the CAAF's recent decision in *Swift*. Appellant's statement that he had "no objection" to the introduction of a confession "as a general proposition of law . . . constitute[d] an affirmative waiver of the right or admission at issue." *Swift*, 76 M.J. 210, 2017 CAAF LEXIS 299, at *20. We similarly find appellant waived, not forfeited, any objection to the instructions.

### 2. Did United States v. Hills Announce a "New Rule?"

Appellant asserts that the CAAF in *Hills* announced a "new rule" and, therefore, he is entitled to the benefit of the new rule while the case is on direct appeal.

Appellant directs us to *United States v. Harcrow*, 66 M.J. 154, 160 (C.A.A.F. 2008). In *Harcrow*, while the case was on direct appeal, the Supreme Court decided the seminal case of *Crawford v. Washington*, 541 U.S. 36 (2004), which reinterpreted a defendant's constitutional right to confront witnesses. At trial, *Harcrow* had not objected to the admission of a lab report as a public record. Prior to *Crawford*, the admission of forensic lab reports as public records was routine and was specifically sanctioned by Mil. R. Evid. 803(8). The CAAF viewed *Crawford* as crafting a new rule and applied it retroactively, ignoring the fact appellant had specifically *waived* any objection to the admission of the lab report.

*Harcrow* adopts the Supreme Court's decision in *Johnson*, that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal -- it is enough that an error be 'plain' at the time of appellate consideration." *Harcrow*, 66 M.J. at 159 (citing *Johnson*, 520 U.S. at 468). The key here is that "settled" law must have been overturned between the time of trial and on appeal.

Thus, we must decide whether, at the time of trial, it was well settled the government could use propensity evidence stemming from charged offenses to prove other charged offenses. The CAAF has clearly said this issue was *never* settled law. *Hills*, 75 M.J. at 353.

The CAAF's decision in *Hills* clearly stands for the proposition the law was not "settled" at the time of trial. The court stated the issue was one of "first impression." *Id*. The court stated it was "obvious" that Mil. R. Evid. 413 cannot be

used to allow propensity inferences stemming from charged offenses. Issues of first impression cannot be well settled.

Nowhere in *Hills* did the court overturn or reverse prior case law. Indeed, the court specifically disavowed such an inference: "Neither this Court nor any federal circuit court has permitted the use of [Mil. R. Evid] 413 or Fed. R. Evid. 413 as a mechanism for admitting evidence of charged conduct to which an accused has pleaded not guilty in order to show a propensity. . . ." *Id*. at 354. The court went on to say the plain language of the rule, the structure of the rule, and its legislative history all dictated the outcome of its decision in *Hills*. In other words, *Hills* clearly states it was never well settled that the instruction in *Hills* was proper.

As we have tried to understand and apply *Hills*, we have discussed in other cases whether some of the CAAF's cases that predated *Hills* appeared to sanction the use of propensity evidence stemming from charged offenses. *See, e.g. Moore*, 2017 CCA LEXIS 191 at *15-18 (Mulligan, S.J. dissenting). However, just as we must follow *Hills* when determining whether an instruction was error, we are likewise bound by the CAAF's interpretation of whether *Hills* overturned settled law under *Harcrow* and *Johnson*.

We note that even were we to find that *Hills* established a new rule, it would not transform waived error into preserved error. We would still, under *Harcrow*, test for plain error. In *Harcrow,* after finding that *Crawford* established a new rule, the CAAF conducted a plain error analysis because the "new rule" caused them to reject appellant's waiver of the issue. That is, the CAAF refused to apply *waiver*, but still gave weight to appellant's failure to preserve the issue at trial.

Finally, regardless of how one reads *Hills*, appellant had numerous grounds on which to object to the government's notice on their use of Mil. R. Evid. 414 as applied to charged conduct. In other words, even ignoring the CAAF's decision in *Hills,* there was *never* an understanding that the use of propensity evidence stemming from charged conduct was *per se* admissible.[7] The CAAF's decision in *United States v. Wright*, 53 M.J. 476 (C.A.A.F. 2000), provided numerous grounds to argue a propensity inference should have been disallowed in a case. Most obviously, appellant was free to argue under Mil. R. Evid. 403 the probative value of the propensity inference could be easily outweighed by the danger of unfair prejudice. Appellant never objected to the instructions on charged misconduct–for any reason.

---

[7] For this reason, this case is unlike *Harcrow* and *United States v. McMurrin*, 70 M.J. 15 (C.A.A.F. 2011).

Accordingly, as the CAAF did not view *Hills* as overturning well-settled law, appellant's waiver is left intact.

We do note, however, that in CAAF's recent decision in *United States v. Hukill*, 76 M.J. 219, 2017 CAAF LEXIS 305 (C.A.A.F. 2017), the court describes the use of the *Hills* instruction as "a common understanding of the law" at the time of trial. *Hukill*, 2017 CAAF LEXIS 305 at *6. However, we do not assess this as changing our understanding of whether *Hills* overturned "settled law" for two reasons. First, our superior court in *Hukill* did not question or overturn the sweeping language used in *Hills* that clearly stated the issue was not settled law (or at least not well settled in appellant's favor). Second, the only authority cited in *Hukill* for this "common understanding" was the Benchbook. While we would agree with the CAAF regarding the common understanding, the Benchbook is not a source of law that makes law "settled."

However, as *Hukill* may be interpreted as stating that *Hills* announced a new rule we will assume as much. If *Hills* is a new rule, we would set aside appellant's waiver and test for plain error. *See Harcrow*, 66 M.J. at 159 (testing for plain error after finding *Crawford* announced a new rule). A "new rule" does not transform "waiver" into preserved error. *See McMurrin* (testing for plain error when appellant was convicted of lesser-included offense that was invalid based on the Court's subsequent opinion in *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010)).

### *3. Forfeiture and Plain Error*

Assuming appellant did not waive the instructional issue in this case (either because his acts were not waiver or because *Hills* did announce a new rule), we turn to the issue of forfeiture and plain error.

Appellant's assignment of error to this court was that the military judge "committed *plain* and prejudicial error" when he instructed the panel on propensity. That is, appellant appears to concede that plain error is the appropriate standard of review. If so, the briefs of the parties both jumped over the plain error analysis and instead focused on whether the government had proven that any error was harmless beyond a reasonable doubt. Accordingly, and to provide transparency so that our reasoning may receive appropriate scrutiny, we discuss the standard of review at some length.

To establish plain error, appellant must show: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights. *United States v. Paige*, 67 M.J. 442, 449 (C.A.A.F. 2009).

Here, because under *Hills* any error was one of a constitutional dimension, "[o]nce [appellant] meets his burden of establishing plain error, the burden shifts to the Government to convince us that this constitutional error was harmless beyond a reasonable doubt." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (internal citation omitted); *Paige*, 67 M.J. at 449.

In other words, under *Paige* and *Carter*, we do not reach the constitutional standard of "harmless beyond a reasonable doubt" unless appellant first meets his burden to establish plain error. "Only if appellant meets that burden of persuasion does the burden shift to the Government to show that the error was not prejudicial. If the plain error is constitutional error, the Government must convince us beyond a reasonable doubt that the error was not prejudicial." *United States v. Carpenter*, 51 M.J. 393, 396 (C.A.A.F. 1999) (citing *United States v. Powell*, 49 M.J. 460, 464-65 (C.A.A.F. 1998)).[8]

We do not find appellant has met his burden of establishing plain error, and therefore we never reach the issue of whether the error is harmless beyond a reasonable doubt.

### *a. Was There Error?*

The first question—was there error?—is answered in the affirmative by our superior court's decision *Hills* and our decision in *Guardado*.

### *b. Was the Error Plain and Obvious?*

We next turn to the question of was the error "plain and obvious." Whether an error is plain and obvious has two parts.

First, we ask how well-settled was the law on the issue. Error is "plain" when it is "obvious" or "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993). Here, the military judge's ruling in this case was not plainly wrong at the time he made it. As discussed above, the use of propensity evidence stemming from a charged offense was not settled at the time of trial. Indeed, in *Hills*, the CAAF described the issue as one of "first impression." *Hills*, 75 M.J. at 353. As an example, as early as 2007, the CAAF had affirmed the findings in a case that involved

---

[8] For all practical purposes, if appellant establishes plain error, the inquiry will likely end. If an appellant has shown material prejudice to a substantial right–as is required for plain error–it is unlikely the government could ever show that the error was harmless beyond a reasonable doubt.

a propensity instruction on both charged and uncharged conduct, but without directly addressing the issue. *United States v. Schroder*, 65 M.J. 49, 52 (C.A.A.F. 2007).

Second, we look to see how obvious the error was in the context of the trial. When examining this prong, we ask whether the error was so obvious "in the context of the entire trial" that "the military judge should be 'faulted for taking no action' even without an objection." *United States v. Gomez*, 76 M.J. 76, 81 (C.A.A.F. 2017) (citing *United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009) (quoting *United States v. Maynard*, 66 M.J. 242, 245 (C.A.A.F. 2008))); *see also United States v. Frady*, 456 U.S. 152, 163 (1982) (Noting that error is clear if "the trial judge and prosecutor [would be] derelict in countenancing it, even absent the defendant's timely assistance in detecting it.").[9]  In other words, we do not find errors to be plain and obvious when the importance of the issue was not obvious at trial.  A military judge is neither omniscient nor clairvoyant and, often having no prior knowledge of how the evidence will unfold, is likely in a worse position than the parties to contemporaneously know the significance of any one piece of evidence or issue.  This is another way of stating that for the military judge to commit plain error, it is not enough to find that the military judge erred with the benefit of hindsight; instead, the gravity of the error needs to be plain at the time.

As previously discussed, there are occasions where an appellate court will apply a fiction and retroactively assume that the error was plain and obvious.  "The Supreme Court has stated that 'where the law at the time of trial was settled and clearly contrary to the law at the time of appeal -- it is enough that an error be 'plain' at the time of appellate consideration." *Harcrow*, 66 M.J. at 159 ("This case illustrates the curious outcome flowing from the confluence of the retroactivity rule and the plain error doctrine.") (Ryan, J. concurring) (citing *Johnson*, 520 U.S. at 468).

In *Henderson*, this fiction was further expanded to included areas of unsettled law.  The Supreme Court answered the question of what happens to subsequent cases

---

[9] The CAAF has rejected "application of the fourth prong of *Olano* when addressing questions under Article 59(a), UCMJ." *United States v. Turnstall*, 72 M.J. 191, 196 n.7 (C.A.A.F. 2013).  Accordingly, comparisons of decisions of federal and military courts are not an exact "apples to apples" comparison.  However, few federal cases turn on the fourth prong.  (That is, it is the rare case where a federal district judge committed plain and obvious error, the error prejudiced the substantive rights of the federal defendant, but the federal defendant does not obtain relief on appeal because of *Olano*'s fourth prong).  Thus, in cases that do not turn on *Olano*'s fourth prong, federal case law may often be persuasive.

when "courts of appeals . . . clarify the law through their opinions."  The Court answered the question as follows:

> When a court of appeals does so, will not all defendants, including many who never objected in the court below, insist that the court of appeals now judge their cases according to the new rule?  And will "plain error" in such cases not then disappear, leaving only simple "error" in its stead?
>
> The answer to this claim is that a new rule of law, set forth by an appellate court, cannot automatically lead that court to consider all contrary determinations by trial courts *plainly* erroneous.  Many such new rules, as we have pointed out, concern matters of degree, not kind.  And a lower court ruling about such matters (say, the nature of a closing argument), even if now wrong (in light of the new appellate holding), is not necessarily *plainly* wrong.  The Rule's requirement that an error be "plain" means that lower court decisions that are questionable but not *plainly* wrong (at time of trial or at time of appeal) fall outside the Rule's scope.
>
> And there are other reasons for concluding that our holding will not open any "plain error" floodgates.  As we have said, the Rule itself contains other screening criteria.  The error must have affected the defendant's substantial rights and it must have seriously affected the fairness, integrity, or public reputation of judicial proceedings.  *Olano*, *supra*, at 732, 113 S. Ct. 1770 []. When courts apply these latter criteria, the fact that a defendant did not object, despite unsettled law, may well count against the grant of Rule 52(b) relief.  Moreover, the problem here arises only when there is a new rule of law, when the law was previously unsettled, and when the District Court reached a decision contrary to the subsequent rule.  These limitations may well explain the absence of any account before us of "plain error" inundation . . . .

17

133 S. Ct. at 1130.[10]

In *Guardado*, we described the CAAF's decision in *Hills* as "sweeping." That is, *Hills* was a decision "of kind" not "degree." Accordingly, under current law, the *Hills* instruction was not merely wrong but was plainly wrong. Thus while we do not find *Hills* to have been a "new rule" because it did not overturn settled law, we do find that post-*Hills*, a *Hills* instruction is plainly wrong. Therefore, this prong too weighs in appellant's favor.

### c. Material Prejudice to a Substantial Right

The third and final prong of the plain error test is prejudice. A finding or sentence of a court-martial "may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." UCMJ art. 59(a).

This prong of the test is similar, but different, from the third prong of the plain error test employed by federal courts.[11] While military courts look for a "material prejudice" to a substantive right, federal courts have no requirement for "materiality." *Compare* Article 59(a), UCMJ, *with* Fed. R. Crim. P. 52(b).

The CAAF has described this difference as "set[ting] a higher threshold for overturning [military] convictions" as compared to federal courts. *United States v. Humphries*, 71 M.J. 209, 220 (C.A.A.F. 2012). On the margin, this difference would

---

[10] As previously discussed, the CAAF has determined that the *Olano*'s fourth prong is inapplicable to court-martial appeals. Accordingly, the only difference between "plain error" and "preserved error" is the burden of proof on appeal and whether the error is "plain and obvious." Thus, we echo Justice Breyer's opinion in *Henderson* that it is not enough that an appellate court determine that a lower court was wrong (i.e. committed error); for appellant to receive relief, the court must have been plainly wrong.

[11] The test for plain error has been analogized as being a restatement of the test for ineffective assistance of counsel. *Close v. United States*, 679 F.3d 714, 720 (8th Cir. 2012) ("The standard for prejudice under *Strickland* is virtually identical to the showing required to establish that a defendant's substantial rights were affected under plain error analysis.") (citing *Becht v. United States*, 403 F.3d 541, 549 (8th Cir. 2005), *cert. denied,* 546 U.S. 1177 (2006); *accord United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *but see United States v. Bono*, 26 M.J. 240, 242 n.2 (C.M.A. 1988) ("We do not mean to imply that a finding of plain error will automatically equate to ineffective assistance of counsel.")).

indicate a military appellant would be less likely to receive relief for plain error based on the third prong.

However, in practice, the standard for determining whether an appellant has proven the prejudice prong in cases of plain error appears to be the same in both federal and military courts. As the CAAF later stated in *Humphries*, "the Supreme Court defined the third prong in a manner consistent with our holdings . . . the appellant must demonstrate a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *Id.* at 221 (internal citations and quotations omitted).

Here, appellant has not met his burden. Issues of "propensity" did not loom large over the court-martial, which produced over 2,100 pages of transcribed record and dozens of government exhibits, including journals by his children. But for the errant instruction, it would be hard to say such concerns were present at all. The government did not argue propensity; to include the *permissible* propensity inferences that related to the uncharged misconduct.[12] Of the fifteen specifications that alleged either a violation of Article 120 or Article 125, the panel acquitted appellant outright of seven specifications and found appellant guilty of a lesser-included offense in one instance. To find error in this case, we would likely need to find that *Hills* instructional error is per se prejudicial error. Accordingly, as we do not find appellant has met his burden[13] of establishing material prejudice to a substantial right, we do not find plain error.

As we do not find plain error, we do not reach the issue of whether the government has proven any error harmless beyond a reasonable doubt. This is the difference between how we treat complaints of plain versus preserved constitutional error. It is a substantial difference. The CAAF's decision in *Hills* is notable for analyzing this difference.

---

[12] At trial, and on appeal, appellant asserted the charges stem from a conspiracy between the four girls to frame appellant. With that as the defense theory, the government did argue that it was incredulous that four victims would simultaneously agree to fabricate allegations against appellant. The government did not argue, however, that if appellant committed one offense, this made it more likely that he committed other offenses.

[13] More accurately, appellant did not attempt to meet this burden. Despite assigning the issue as one of plain error, appellant's brief focused entirely on stating that the government could not prove that the error was harmless beyond a reasonable doubt– not whether appellant had met his burden of establishing plain error.

*Hills* involved a case where the Mil. R. Evid. 413 instruction was given "over defense counsel's objection." *Hills*, 75 M.J. at 352. That is, the error was preserved. When constitutional error is preserved, an appellate court tests to see if the error was harmless beyond a reasonable doubt. *Id.* However, when *Hills* was before this court, we did not see the error as constitutional and tested only for non-constitutional error. The CAAF in *Hills* noted this difference in standards as follows: "Given that we apply a different standard for assessing the error than the ACCA did, we also reach a different conclusion regarding the error's import to the outcome of the case." *Id.* at 358. That is, had the error in *Hills* been unpreserved, *Hills* itself may have turned out differently.[14] The accused in *Hills* objected to the instruction and preserved the instructional error; appellant did not.

Setting aside the issue of waiver, unlike *Hills*, here we are presented with unpreserved error for which we first must test for plain error. Accordingly, we likewise reach a different result than our superior court did in *Hills,* and we find appellant has not met his burden of showing plain error. We read this result as being consistent with the distinction CAAF made in *Hills* regarding preserved and unpreserved errors.

### D. Flight from Trial

Appellant fled his trial after the government rested its case on the merits. The military judge determined appellant's absence was voluntary (in a separate court-martial, he would later plead guilty to being absent without leave) and the case proceeded without him. At oral argument, appellant's counsel stated the defense case had anticipated appellant testifying, making his absence from trial a significant blow to the defense presentation.

We specified the issue of whether the military judge erred when he instructed the panel during sentencing they could consider appellant's absence in sentencing. In answering our specified issue, we address three sub-questions. First, may evidence of an accused's voluntary absence ever be admitted in a court-martial? If

---

[14] This is not the first time this panel has addressed a case in which the accused did not object to a propensity instruction and the trial counsel never argued issues of propensity. In *Moore*, we were also presented with a case in which appellant did not object to the *Hills* instruction. 2017 CCA LEXIS 191 at *5-6. In that case, however, we accepted the government's concession any error was obvious error. *Id.* at *6. We also accepted the government's framing of the issue as being one of proof beyond a reasonable doubt. In *Guardado*, we assumed without deciding the error was plain error. 75 M.J. at 897 n.10.

so, under what circumstances can the evidence be admitted for the first time during sentencing? And, finally, were the military judge's instructions in this case proper?

We answer these questions as follows: Consistent with overwhelming case law, we find when permitted by the rules of evidence, an accused's voluntary absence from trial is admissible. However, the government faces a tougher burden when evidence of an accused's voluntary absence is admitted for the first time during sentencing, as the evidence must also be admissible under R.C.M. 1001(b). Finally, we find the military judge erred when instructing the panel on how they could consider this evidence.

Ultimately, however, as appellant did not object to either the introduction of evidence of his voluntary absence or the military judge's instruction, we test for plain error. We find appellant has not met his burden of establishing plain error.

*1. Background*

After appellant did not appear at his court-martial, the military judge had an extensive Article 39(a), UCMJ, session. The military judge determined appellant had voluntarily absented himself from the court-martial and the court-martial could continue. That appellant was voluntarily absent from his court-martial–and that the court-martial could therefore continue–is not reasonably in dispute. Rather, the issue is whether it is permissible to allow the government to introduce evidence of appellant's voluntary absence to the panel.

After the military judge found appellant was voluntarily absent, the government did *not* request to present any evidence to the panel on appellant's intentional absence during findings. Accordingly, the military judge instructed the panel they could not consider appellant's absence for any reason. At appellant's counsel's request, the military judge modified the standard instruction and gave the following instruction:

> Members, you may notice that the accused is not present. Various circumstances may exist whereby a court-martial can proceed without the accused being present in the courtroom. I have determined that such circumstances exist in this case. You are not permitted to speculate as to why CW4 Hoffman is not present in court today. You must not draw any inference adverse to CW4 Hoffman because he is not appearing personally before you. You may not infer that he has done anything wrong, and you may not infer that he is guilty of any offense because of his absence in - - from court today. If he's found guilty of any offense by this court-martial, you must not consider

21

> his absence before this court-martial, for any purpose
> when you close to deliberate upon the sentence to be
> adjudged if you find him guilty of any offense.

The instruction had the effect of making appellant's absence irrelevant for both findings and sentence. Unless read closely, the instruction may have left the lay listener with the impression the military judge had sanctioned the accused's absence, as the military judge informed the panel that there are many "circumstances" where a court-martial may continue without an accused, and that the military judge himself had determined "that such circumstances exist in this case."

While the court was closed for deliberations on findings, the government requested they be allowed to introduce evidence of appellant's voluntary absence during sentencing as evidence of appellant's lack of rehabilitative potential. After reviewing several cases, the military judge reconsidered his prior decision and allowed the government to present evidence that appellant was voluntarily absent.

The government called a single witness during its presentencing case, Mr. Hutton, who testified by phone that appellant and his girlfriend stopped by his house the previous evening around 8:30 or 9:00. Mr. Hutton testified that he lived in Oklahoma City, Oklahoma. (The trial was at Fort Leonard Wood, Missouri). He testified that appellant stayed for about five minutes, told Mr Hutton that they "were on the move," and asked Mr. Hutton to look after his dog. Appellant left Mr. Hutton with a large bag of dog food and tried to give him $100 to cover expenses. Overall, the effect of the testimony was to present appellant and his girlfriend as on the run.[15]

The military judge drafted an instruction for the panel as to how they could use this evidence. He first read the substance of the instructions to the parties

---

[15] After he was sworn, but as the trial counsel asked Mr. Hutton if he was in a place where he could give testimony, there was a disturbance on Mr. Hutton's end of the phone call. Mr. Hutton explained he was trying to get appellant's dog back in the house. During this brief period, Mr. Hutton switched from speaking to the trial counsel, to apparently addressing the dog. In the midst of this, appellant's counsel objected to "this kind of testimony." On appeal, appellant describes this as an objection to Mr. Hutton's providing evidence about appellant's absence. We disagree as a matter of fact. The objection, which was never developed or maintained, was aimed at either the ongoing commotion being presented to the members or perhaps to taking telephonic testimony. In any event, immediately after the objection, Mr. Hutton stated "Now, I am in the house and it's quiet." Mr. Hutton then continued his testimony without interruption, and without further objection. There was no objection to the presentation of evidence that appellant was absent.

outside the presence of the members.  Neither side objected to the instruction.  He then read the following instruction to the members:

> The voluntary absence of the accused from these proceedings is uncharged misconduct.  You haven't convicted him of that, and you can't convict him of that because he hasn't been charged with that.  You may consider this information for the limited purpose of its tendency, if it has any, to prove the rehabilitative potential of the accused and as evidence directly relating to the offenses of which the accused stands convicted.  You may not consider it for any other purpose and you may not mete out additional punishment for this uncharged offense.

The effect of the instruction was to tell the panel that appellant was voluntarily absent from the court-martial.  The panel was permitted to consider appellant's voluntary absence only to the extent that it "prove[s] the rehabilitative potential" and as evidence "directly relating to the offenses."

### 2. May Evidence of an Accused's Voluntary Absence from Trial be Admitted in a Court-Martial?

*United States v. Minter*, 8 M.J. 867 (N.M. Ct. Crim. App. 1980) has perhaps been understood as prohibiting the introduction of evidence of an accused's voluntary absence in all cases, thereby precipitating the sole instruction currently found in the Benchbook.  Two years later, in *United States v. Hardin* the Navy-Marine Corps Court of Criminal Appeals [hereinafter Navy Court] stated "we believe it is well-settled that an accused's absence from trial cannot be considered by the fact-finder for any purpose whatsoever."  14 M.J. 880, 881 (N.M. Ct. Crim. App. 1982).  However, we believe that interpretation of *Minter* is mistaken for three reasons.

First, three years after *Hardin* was decided, the Navy Court specifically disavowed the reasoning in *Hardin*.  *United States v. Chapman*, 20 M.J. 717, 718 (N.M. Ct. Crim. App. 1985) (*Chapman I*).  The court described the sentence from *Hardin* quoted above as "dictum" and, accordingly, "we are not bound by it."  *Id*. at 718.  As we discuss in more detail below, the court in *Chapman I* went on to permit the introduction of evidence of appellant's voluntary absence from the court-martial.  To the extent that the Navy-Marine Court held, in either *Minter* or *Hardin*, that evidence of voluntary flight was per se prohibited, that same court had reversed course by 1985.

Second, read closely, *Minter* does not stand for the proposition that evidence of an accused's absence from a court-martial is per se prohibited.  The problem in

*Minter* is the court told the panel *the court* had found the accused committed uncharged misconduct. While a military judge may act as gate-keeper prior to admitting evidence of uncharged misconduct, once admitted, it is up to the *fact-finder* to determine whether to believe the evidence, and how much weight to give it. *See Huddleston v. United States*, 485 U.S. 681 (1988). When the military judge in *Minter* instructed the panel the accused was voluntarily absent, he substituted the panel's fact-finding authority for his own.

Finally, *Minter* was a case where the court-martial predated the promulgation of the Military Rules of Evidence in 1980. Thus, even to the extent *Minter* stands for the proposition an accused's voluntary absence is per se inadmissible at a court-martial, the reasoning in *Minter* must yield to the rules of evidence. Put differently, if an accused's voluntary absence is admissible under the Military Rules of Evidence–discussed below–*Minter* would not otherwise operate to prohibit the admission of the evidence.

Accordingly, we do not read *Minter* as being current persuasive authority. Notwithstanding the Benchbook instruction was copied from *Minter*, no case other than *Hardin* has ever cited *Minter* as authority. In turn, the only case to ever cite to *Hardin* was when the Navy Court disavowed *Hardin* in *Chapman I*.

Instead, we believe the admissibility (and inadmissibility) of evidence of an accused's voluntary absence from trial is determined by reference to the Military Rules of Evidence–and in the case of evidence introduced during sentencing, R.C.M. 1001(b).

In general, evidence of an accused's flight may be admitted as either: 1) an admission by conduct; or 2) as evidence of uncharged misconduct. Our review of case law indicates that federal courts generally admit evidence of an accused's flight under the former theory.

That evidence of a defendant's flight is sometimes admissible would not appear to be controversial. Indeed, as the Supreme Court said well over a century ago, "the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt." *Allen v. United States*, 164 U.S. 492, 499, (1896); *see also United States v. Simmon*s, 54 M.J. 883, 891 (N.M. Ct. Crim. App. 2001) ("Military case law has long supported the admission of evidence of flight as evidence of consciousness of guilt."); *United States v. Murphy*, 996 F.2d 94, 96 (5th Cir. 1993) ("Evidence of an accused's flight is generally admissible as tending to establish guilt."), *cert. denied*, 510 U.S. 971 (1993); *United States v. Sanchez*, 790 F.2d 245, 252 (2nd Cir. 1986) ("[I]t is universally conceded that the fact of an accused's flight . . . is admissible as evidence of consciousness of guilt.") (internal citations omitted); *United States v. Touchstone*, 726 F.2d 1116, 1119 (6th Cir. 1984) (in a case involving the *midtrial*

24

flight of defendant "[o]ur review of the law satisfies us that 'flight' is generally admissible as evidence of guilt, and that juries are given the power to determine how much weight should be given to such evidence"); *United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir. 1982) ("Traditionally flight has been viewed as an admission by conduct which expresses consciousness of guilt. . . . As such, flight evidence carries with it a strong presumption of admissibility.").

All of this is a lengthy way of stating the admissibility of evidence of an accused's voluntary absence, like other evidence of admissions by conduct and uncharged misconduct, is determined by reference to the rules of evidence. The military judge serves as an initial gatekeeper, but once admitted, leaves to the fact-finder to determine the credibility and weight of the evidence. Whether the evidence is admissible, and what weight it might be given, turns on the facts of each individual case. To the extent *Minter* says otherwise, we do not find it to be persuasive authority. Our own decision in *United States v. Denney* also said as much. 28 M.J. 521, 524 n.2 (A.C.M.R. 1989).

Accordingly, we see no per se prohibition on introducing evidence of an accused's voluntary absence as evidence.

### *3. May Evidence of an Accused's Voluntary Absence be Introduced for the First Time in Sentencing?*

In the findings portion of the trial, evidence of flight may be relevant to the issue of guilt. "It is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." Vol. II, J. Wigmore on Evidence, Chadbourn Rev. § 276.

However, when evidence of flight is admitted for the first time in sentencing, the issue of guilt has already been decided. Thus, what might have been admissible during the merits portion of a trial may be inadmissible at sentencing if it does not make any fact *at issue* more or less likely. *See* Mil. R. Evid 401. Stated another way, evidence that tends to show the accused committed the offense is not relevant in a presentencing proceeding unless it also bears on the appropriate sentence. *See* R.C.M. 1001(b).

During presentencing proceedings, evidence introduced in sentencing must be relevant to the determination of a proper sentence.[16] *Id.* Evidence that the accused

---

[16] For example, courts have found it permissible to introduce evidence of an accused's flight through the accused's service records. *See* R.C.M. 1001(b)(2). This

(. . . continued)

acted in a manner that demonstrates consciousness of guilt or shows the accused had a guilty mind is of little relevance when the accused's guilt has already been determined. Thus, our superior court, in *United States v. Wingart*, 27 M.J. 128 (C.M.A. 1988), stated that evidence of uncharged misconduct, introduced for the first time in sentencing, is not admissible to the determination of a proper sentence unless it also meets the requirements of R.C.M. 1001(b).[17]

The military judge admitted evidence of the accused's voluntary absence as evidence relating to 1) the accused's potential for rehabilitation; and 2) evidence of aggravating circumstances directly relating to the offense.

### *a. Is Evidence of an Accused's Voluntary Absence from Trial Admissible to Show the Accused's Potential for Rehabilitation?*

The military judge found evidence of the accused's voluntary absence was admissible under R.C.M. 1001(b)(5) as evidence of the accused' rehabilitative potential. In so doing, the military judge reasonably relied on precedent from a published summary disposition by the CAAF, precedent from this court, and a persuasive published opinion by our sister court–all of which we discuss below.

---

(continued . . .)

court has specifically sanctioned the introduction of Department of the Army Form 4187 documenting an accused's change in status from "present for duty" to "absent without leave." *United States v. Denny*, 28 M.J. 521, 525 (A.C.M.R. 1989). Similarly, in *United States v. Centers*, NMCM 894326, 1991 CMR LEXIS 824 (N.M.C.M.R. 1991), the court found that service records of the accused documenting his flight were properly admitted under R.C.M. 1001(b)(2); *see also United States v. Perry*, 20 M.J. 1026 (A.C.M.R. 1985) (accused's performance as a pretrial confinement prisoner qualified as evidence of the character of his *prior* service and was admissible as long as the military judge applied the balancing test of Mil. R. Evid. 403); *but see United States v. Fontenot*, 29 M.J. 244, 245-48 (C.A.A.F. 1989) (discussing when a document is a personal record *made or maintained* in accordance with departmental regulations).

[17] An accused's flight from trial may certainly be relevant to the determination of a proper sentence as it at least reflects on the need for specific deterrence. However, when evidence of an accused's voluntary absence is admitted for the first time during sentencing, on appeal the question is not only was the evidence admissible under the Military Rules of Evidence. We must also determine whether the evidence was admissible under the narrower aperture of R.C.M. 1001(b).

Notwithstanding this authority, we discuss this issue in depth as none of these cases directly address what would otherwise appear to be a dispositive issue. Namely, the government's presentation of evidence on rehabilitative potential is limited to *opinions* concerning the accused's previous performance as a service member. R.C.M. 1001(b)(5)(A). Evidence of specific acts (such as fleeing trial) would not appear to be admissible under the rule.

According to the rule, the government may not admit evidence of specific uncharged acts on direct examination to show an accused's poor rehabilitative potential. The scope of a witness's opinion is "limited to whether the accused has rehabilitative potential and to the magnitude or quality of any such potential." R.C.M. 1001(b)(5)(D). Indeed, as the CAAF has specifically stated "inquiry into specific instances of conduct is not permitted on direct examination, but may be made on cross-examination." *United States v. Horner*, 22 M.J. 294, 295 (C.M.A. 1986). However, there appears to be a specific judge-made exception to this rule.

In *Chapman I*, the trial judge stated, on the record, he specifically considered the accused's absence from trial as being "relevant to his remorse or lack thereof for the offenses of which he has been convicted and as relevant to his lack of potential for rehabilitation." 20 M.J. at 718. On appeal, our sister court held evidence of voluntary "absence is not specifically excluded from consideration by Rule 1001 and is highly relevant to rehabilitative potential, particularly demonstrating lack of remorse and unreliability." The court went on to state:

> [T]he military judge or members, as the case may be, deserve the best possible information and the opportunity to consider the accused's voluntary and unauthorized absence from trial. Caution is vital, however, when such absence is included in sentencing deliberations. It cannot be the basis for increased punishment but is strictly limited to a role in determining an accused's rehabilitative potential.

*Id.* The court "perceive[d] no reason why such absence should not be a valid factor to be considered in resolving the limited issue of an accused's potential for rehabilitation." *Id.*

Our superior court granted a petition for review of *Chapman I* on the issue of "[w]hether the military judge may consider an accused's voluntary and unauthorized absence from trial in determining an appropriate sentence?" *United States v. Chapman*, 21 M.J. 306 (C.M.A. 1985) (order). Our superior court then affirmed the Navy Court in a summary disposition (with only two judges participating):

> On further consideration of the granted issue (21 M.J. 306), we hold that the military judge properly considered appellant's voluntary absence from trial in determining, for sentencing purposes, his prospects for rehabilitation and retention in the service. *Cf. Roberts v. United States*, 445 U.S. 552, 558 [] (1980); *United States v. Grayson*, 438 U.S. 41, [] (1978); *United States v. Warren*, 13 M.J. 278, 286 (C.M.A.1982). Accordingly, it is ordered that the decision of the United States Navy-Marine Corps Court of Military Review (20 M.J. 717) is affirmed.

*United States v. Chapman*, 23 M.J. 226 (C.M.A. 1986) (*Chapman II*). The CAAF appears to have explicitly sanctioned what the military judge did in the case at bar. If the CAAF's summary disposition in *Chapman II* is precedent, we are obligated to follow it regardless of how we might otherwise read R.C.M. 1001(b). Thus we must determine whether a summary disposition is binding precedent.

For some time, it was an open question as to how much precedential weight lower courts should give a summary disposition issued by the CAAF. In *United States v. Diaz*, the court specifically declined to answer the question. 40 M.J. 335, 340 (C.A.A.F. 1994) ("we need not finally decide here the extent to which, in the future, counsel may resort to summary dispositions . . . ."). However, in *LRM v. Kastenberg*, the CAAF appears to adopt the Supreme Court practice "that 'lower courts are bound by summary decisions by' the Supreme Court" 72 M.J. 364, 370 (C.A.A.F. 2013) (citing *Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975)).

Accordingly, it appears with regards to this one area of the law, the specific act of a voluntary absence is admissible as evidence of an accused's potential for "rehabilitation and retention." Indeed, following the CAAF's decision in *Chapman II*, our own published decision in *Denney* adopted the CAAF's view that an accused's voluntary absence "can be considered for the limited purpose of determining rehabilitative potential" as the "[v]oluntary absence of an accused from trial is a unique form of uncharged misconduct." *Denney*, 28 M.J. at 524, 525.

As a result, regardless of how persuasive we might find appellant's interpretation of R.C.M. 1001(b)(5), we are obligated to follow our superior court's decision in *Chapman II* and our own opinion in *Denney*. Indeed, these precedents are specifically cited in the Benchbook and have been relied on by military judges for nearly thirty years.[18] Accordingly, governed by our understanding of *Chapman*

---

[18] Benchbook (30 Sep. 1996) Change 2, p. 140 (dated 15 Oct. 1999); Benchbook, para. 2-7-23 (1 Apr. 2001 and 1 Jan. 2010).

*II*, we do not find error, let alone plain error, when the military judge admitted evidence of the accused's voluntary absence. However, to the extent the CAAF's opinion in *Horner* is controlling authority, we later will also address whether the military judge plainly erred.

### b. Was Evidence of Appellant's Voluntary Absence from Trial Admissible as Evidence in Aggravation?

The military judge admitted evidence of appellant's absence as an "aggravating circumstance[] directly relating to or resulting from the offenses." R.C.M. 1001(b)(4). If evidence of an accused's voluntary absence does directly relate to the offense, it is clearly admissible in sentencing under R.C.M. 1001(b)(4). Here, we do not see the evidence actually admitted as meeting this criterion.

As summarized above, the evidence of appellant's voluntary absence was limited to the testimony of Mr. Hutton, who testified that he had just seen appellant "on the move." While the obvious inference from Mr. Hutton's testimony was appellant had voluntarily absented himself from trial, it would be a stretch to say this was evidence "in aggravation" directly relating to appellant's sexual misconduct offenses. Indeed, the only aggravation evidence introduced as a result of appellant's flight was that Mr. Hutton was asked to look after appellant's dog.

It is perhaps possible an accused's flight from trial serves to aggravate the harm caused by the accused's underlying offenses. This is most likely to present itself in the form of aggravated harm to a crime victim. In this case, however, no such evidence was introduced.

### 4. The Military Judge's Instructions to the Panel.

As already discussed, there is no instruction in the Benchbook on how to instruct the members when evidence of an accused's absence has been admitted.[19] We have one concern with the instruction crafted by the military judge.[20]

---

[19] Such an instruction may be appropriate and should be tailored to reflect whether the evidence was admitted as an admission by conduct, uncharged misconduct, or when the evidence is admitted for the first time during presentencing proceedings.

[20] As discussed above, we do not find Mr. Hutton's testimony could be considered evidence in aggravation directly relating to appellant's offenses. Accordingly, it was also error to instruct the panel they could consider it for this purpose.

The instruction appeared to take the issue of *whether* the accused was voluntarily absent away from the members.  The first line of the instruction was "[t]he voluntary absence of the accused from these proceedings *is* uncharged misconduct."  (Emphasis added).  The accused had, in fact, voluntarily absented himself from the proceedings.  And, the panel members had heard evidence from which they could easily infer the accused's absence was voluntary.  Nevertheless, short of meeting the requirements for judicial notice, *see* Mil. R. Evid. 201, whether the accused was voluntarily absent was a matter for the factfinder.  *United States v. Cook*, 20 U.S.C.M.A. 504, 43 C.M.R. 344 (1971).

## 5. *Plain Error*

As appellant did not object to either the evidence or the instruction, he forfeited the issue unless it amounted to plain error.  R.C.M. 1001(f) and Mil. R. Evid. 102(d).  As previously discussed, to establish plain error, appellant must show: 1) an error was committed; 2) the error was plain, or clear, or obvious; and 3) the error resulted in material prejudice to substantial rights.  *Paige*, 67 M.J. at 449.  We do not find plain error.

First, we do not believe the law governing the admissibility of evidence of an accused's voluntary absence in sentencing to have been clear.  As the foregoing discussion indicates, when evidence of an accused's absence from trial is admissible has been subject to different interpretations.  Accordingly, any error in the admission of such evidence was not plain or obvious error.

Second, appellant has not met his burden of establishing prejudice.  While we find the military judge erred when he instructed the panel that the accused was voluntarily absent, it was not a disputed fact at trial.  No contrary evidence was introduced.  This was not a case where there was competing evidence and the military judge erred by weighing in on one side or the other.  As a result, while the instruction was error, the error was harmless.  *C.f. United States v. Brown*, 50 M.J. 262, 268 (C.A.A.F. 1999) ("The admission of this uncontradicted evidence clearly marginalized the impact of the trial judge's instruction . . . .").

## E. Trial Counsel's Sentencing Argument

Although not an assigned error,[21] there are several issues regarding the sentencing argument by the trial counsel.  Defense counsel did not object at trial.  Under the CAAF's recent precedent, we find that appellant's failure to object

---

[21] Appellant raised this issue in his *Grostefon* submission.

waived, not forfeited, any objection to the improper argument. *Ahern*, 76 M.J. at 197.

The argument nonetheless remains concerning, and notwithstanding the absence of an assigned error or finding of waiver, the issue merits comment.

### *1. The Argument*

In discussing the length of an appropriate sentence, the trial counsel argued as follows:

> . . . what's it worth?  How long?  No child's going to want to see their father go away in prison and die.  No daughter would want that.  No son would want that.  But *I'm confident when I tell you that* they could not live with the knowledge that their father harmed anybody else.  And if it's a choice, an impossible choice for a child, between their father imprisoned for the rest of his life and their father getting out and harming somebody else, *they would choose their father* and life without parole in a prison.

(Emphasis added).

This argument contains two significant problems, which we discuss below.

At the conclusion of his argument, when asking for a sentence of life without parole, the trial counsel stated:

> So, in conclusion, he took advantage of his position as a safe, protective respected position of people [sic].  And so, if you sentence him to a period of years, if you sentence him to life, then what happens potentially is he gets out, and what is he then?  A safe protective class of persons.  He's a grandpa.  You see, he might not have his grandkids with him, and the daughters said they'll never, ever let their dad around their grandkids, but he can show some pictures to some people and say, "Hey, yeah, I've got grandkids too.  I'll take care of your kids.  Not a problem.  I'm just a nice old guy.  Yeah, I was in the military before."  A military guy would never do anything bad, and then what happens?  He's shown no remorse.  He's shown no control.  He can't control himself.  He can't, and he doesn't want to.  I ask that you sentence him, as hard as it is, to life without parole.

## *2. Law*

Improper argument involves a question of law that this court reviews de novo. *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be "confident that [the appellant] was sentenced on the basis of the evidence alone." *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (brackets in original) (internal quotation marks omitted).

The "trial counsel is at liberty to strike hard, but not foul, blows." *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (citation and quotation marks omitted). "It is error for trial counsel to make arguments that 'unduly . . . inflame the passions or prejudices of the court members.'" *Id*. (quoting *United States v. Clifton*, 15 M.J. 26, 30 (C.A.A.F. 1983)). The trial counsel also must not inject matters that are not relevant into argument. *Id*. (citing *United States v. Fletcher*, 62 M.J. 175, 180 (C.A.A.F. 2005); R.C.M. 919(b) discussion). Nor can the trial counsel ask court members to place themselves in the shoes of the victim or a near relative. *Baer*, 53 M.J. at 237-38.

However, and critically here, R.C.M. 1001(g), provides: "Failure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute *waiver* of the objection." (Emphasis added). Under the CAAF's recent decision in *Ahern*, "waiver" in this context means waiver, not forfeiture. 76 M.J. at 197.

In *Ahern*, the CAAF determined when the Rules for Court-Martial mean "waiver" vice "forfeiture." *Id*. When the rule "plainly states" that a claim is "waived" absent an objection, then it is waived. When the rule states "waived absent plain error" than the claim is only forfeited and we test for plain error. *Id*. at *8-9.

In other words, we are to apply the plain language of the rule. When the rule says "waiver" without mentioning a plain error analysis it means exactly what it says. As a general rule, we are required to give the Rules for Court-Martial their plain meaning unless they clearly contradict an applicable statute (such as the UCMJ) or the Constitution.

While *Ahern* involved the interpretation of Mil. R. Evid. 304, the logic of the opinion applies equally to R.C.M. 1001(g). Both rules "unambiguously provide[] that any claim arising under [the rule] is waived absent an objection." *Id*. at *9.

*Ahern* involved a question of statutory interpretation. We are required to follow the President's promulgation of the Rules for Courts-Martial unless they either violate the UCMJ or the Constitution. When the President says the failure to object to an improper sentencing argument "waives" any error (with no provision for plain error), under *Ahern* that is the rule.

Claims of error in a sentencing argument are waived if not objected to. R.C.M. 1001(g). There is no "absent plain error" exception to the rule. While the CAAF has in the past conducted a plain error analysis on unpreserved sentencing argument errors, applying the court's recent decision in *Ahern* compels us to find waiver in this case. To hold otherwise would require that we find the same words in the governing regulations to have the opposite meaning. *Compare* Mil. R. Evid. 304; R.C.M. 919(c); R.C.M. 920(f) *with* R.C.M. 1001(g).

Indeed, Judge Ryan's dissenting opinion in *Marsh* foreshadows her later unanimous opinion in *Ahern*. *Marsh*, 70 M.J. at 108, n.1 (Ryan, J. concurring in part and dissenting in part). In *Marsh*, she stated "treating failure to object to improper presentencing argument as waiver rather than forfeiture appears compelled by R.C.M. 1001(g)" but in *Marsh* "no one ha[d] requested that we revisit case law to the contrary." *Id.*

Notwithstanding appellant's waiver, under our unique Article 66(c), UCMJ, authority we may "notice" the issue and ignore the waiver. *See* UCMJ art. 66(c). To determine whether noticing the error is appropriate, we must first review the entire record. *United States v. Schweitzer*, 68 M.J. 133, 139 (C.A.A.F. 2009) ("the court below was required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record"). *See also United States v. Chin*, 75 M.J. 220 (C.A.A.F. 2016); *United States v. Frey*, 73 M.J. 245 (C.A.A.F. 2013) (counsel only objected to one of multiple improper arguments and CAAF did not find prejudicial error). We are not convinced in this case to notice the waived error. Nor, assuming *Ahern* is not controlling, are we convinced the argument amounted to plain error.

Notably, unlike the case today, the error in *Frey* was at least partially preserved. The defense counsel objected to the improper argument, and the military judge overruled the objection and did not adequately issue a corrective instruction. Thus, appellant faces a higher burden than the *unsuccessful* appellant in *Frey*.

Additionally, in *Frey* the trial counsel argued the dangers of recidivism when the accused was guilty of assaulting only one victim on one occasion. *Id*. at 247. Here, by contrast, appellant was convicted of multiple child sex offenses against several victims.

### 3. Analysis

Notwithstanding that we find appellant to have waived the issue, we have several concerns with the trial counsel's arguments.

First, the trial counsel vouched for appellant's victims when he argued "I'm confident when I tell you that they could not live with the knowledge that their father harmed anyone else." "[I]mproper vouching occurs when the trial counsel places the prestige of the government behind a witness through personal assurances of the witness's veracity." *Fletcher*, 62 M.J. at 180 (internal citations omitted). That is, the trial counsel used his position and authority to tell the panel members what testimony from the victims might have yielded.

Second, the vouched-for testimony was itself improper as it was a recommendation for a specific sentence. The trial counsel argued that the victims, given the hard choice of determining an appropriate sentence for appellant, "would choose . . . life without parole in a prison." "The question of appropriateness of punishment is one which must be decided by the court-martial; it cannot be usurped by a witness."[22] *United States v. Ohrt*, 28 M.J. 301, 305 (C.M.A. 1989). Thus, for the same reasons we do not permit an opinion of guilt or innocence, or of "truthfulness" or "untruthfulness" of witnesses, we do not allow opinions as to appropriate sentences." *Id.* If it is error to elicit from a witness a specific sentence recommendation, it is certainly error for the trial counsel to argue that the members should trust him that the victims would want a specific sentence.

Our third concern is whether the trial counsel's arguments improperly referenced the future dangerousness of appellant. However, here, the members were permissibly instructed that "[o]ur society recognizes five principal reasons for the sentence of those who violate the law," including "[p]rotection of society from the

---

[22] This case was tried prior to the effective date of Article 6b, UCMJ, which provides victims of crimes the right to be heard in sentencing. Had the case been tried later, the ability of a crime victim to make a sentence recommendation would be unclear. *Compare* UCMJ art. 6b(a)(4)(B) *with* 18 U.S.C. § 3771(a)(4); 150 CONG. REC. S10910-01 (Oct 9, 2004) ("When a victim invokes this right during plea and sentencing proceedings, it is intended that he or she be allowed to provide all three types of victim impact: the character of the victim, the impact of the crime on the victim, the victims' family and the community, *and sentencing recommendations*.") (remarks of Sen. Kyl on 18 U.S.C. § 3771) (emphasis added); *but see* R.C.M. 1001A discussion (right to be heard in sentencing does not include the right to be heard *on the sentence*).

wrongdoer" and "deterrence of the wrongdoer." Benchbook, para. 2-5-21; *Ohrt*, 28 M.J. at 305.

Whether trial counsel may argue future dangerousness at sentencing may be unclear. In *Marsh,* the CAAF stated the following:

> While this court has not previously examined whether a prosecutor can properly ask court members to place themselves in the shoes of *potential future victims*, the United States Court of Appeals for the Sixth Circuit has addressed this issue. In *Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005), that court held that a suggestion that the jury put itself in the place of someone who may run into the defendant on the street is impermissible argument. This is because trial counsel must not "fan the flames of the jurors' fears by predicting that if they do not convict . . . some . . . calamity will consume their community." *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009)

70 M.J. at 106 (emphasis added). However, we do not read *Marsh* as prohibiting all argument on an accused's future dangerousness. First, the Sixth Circuit cases that *Marsh* references are cases where the government introduced future dangerousness during *findings*. The future dangerousness of a defendant is logically irrelevant to the question of whether he committed past conduct. Whereas the future dangerousness of a defendant is highly relevant to determining a proper sentence. The degree to which society needs "protection" from an accused is significantly correlated with the danger that accused will present in the future.

Nonetheless we remain concerned that the trial counsel's argument impermissibly inflamed the passions of the panel when he implied that if the panel did not sentence appellant to life without the possibility of parole, appellant would sexually abuse additional children. *Fletcher*, 62 M.J. at 183 (citing *Clifton*, 15 M.J. at 30 and *United States v. Barrazamartinez*, 58 M.J. 173, 176 (C.A.A.F. 2003)).

While the sentencing argument in this case warrants this analysis, we cannot find that appellant has shown he was prejudiced by the argument, and therefore leave appellant's waiver intact, or alternatively, do not find plain error. First, appellant's sentence while severe, is not disproportionate in light of the gravity of his offenses. Second, the trial counsel's entire argument was geared towards convincing the panel to impose a sentence that precluded parole. The panel was not convinced by the trial counsel's argument and appellant will be eligible for parole. Third, this case strikes us as similar to our superior court's decision in *Frey*, which the CAAF affirmed as noted above, notwithstanding that the error discussed in that case had been preserved at trial.

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court