# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, CAMPANELLA, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JUVENTINO TOVARCHAVEZ**
**United States Army, Appellant**

ARMY 20150250

Headquarters, 8th Theater Sustainment Command
Gregory A. Gross, Military Judge
Colonel Anthony T. Febbo, Staff Judge Advocate (pretrial and recommendation)
Lieutenant Colonel LaJohnne A.W. Morris, Acting Staff Judge Advocate (addendum)

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Captain Ryan Yoder, JA; Major Brian J. Sullivan, JA (on brief); Captain Ryan Yoder, JA; Major Brian J. Sullivan, JA (reply brief); Lieutenant Colonel Melissa R. Covolesky, JA; Captain Ryan Yoder, JA; Major Brian J. Sullivan, JA (on brief in response to specified issues); Lieutenant Colonel Carrier, JA; Captain Cody Cheek, JA; Major Brian J. Sullivan, JA (reply brief to specified issues).

For Appellee: Lieutenant Colonel A.G. Courie III, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief); Major Michael E. Korte, JA; Captain Christopher A. Clausen, JA (on brief in response to specified issues).

7 September 2017

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

Charged with sexually assaulting his fellow soldier Specialist (SPC) JR on two separate occasions, an enlisted panel of a general court-martial convicted

appellant only of the latter instance.[1]  Appellant collaterally attacks his conviction and claims his counsel were ineffective at trial.[2]  Because the affidavits submitted by the parties contain material differences in fact that we cannot resolve on appeal, we remand the case for a hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).  Appellant also raises two assignments of legal error directly attacking the findings.  Both merit discussion, but not relief.

The case is before us for review under Article 66, UCMJ.  The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for two years, total forfeiture of pay and allowances, and reduction to E-1.

## LAW AND DISCUSSION

### A.  *Ineffective Assistance of Counsel*

Appellant alleges his defense counsel were deficient in cross-examining SPC JR and that this deficiency resulted in the panel finding him guilty.  Appellant specifically asserts, as part of the assigned error, that the civilian defense counsel (CDC) even admitted his ineffectiveness.  The government disagrees.

### 1.  *May this court consider unsworn unauthenticated matter?*

Appellant relies on a printed email signed by "Don" from 520508[####]@yzwplx.com that was included in appellant's Rules for Courts-Martial [hereinafter R.C.M.] 1105 matters.  Appellant asserts the email is from appellant's civilian defense counsel to appellant's military defense counsel.  The date on the email indicates it was sent shortly after trial.

---

[1]  Appellant was charged with two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012 & Supp. I 2014) [hereinafter UCMJ].

[2]  Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant asserts the evidence is factually and legally insufficient to sustain a conviction.  We disagree.  Appellant also asks us to consider the issues of post-trial delay and ineffective assistance of counsel raised in his post-trial matters.  We find the post-trial delay in this case did not rise to the level of a due process violation and does not warrant relief.  Appellant's ineffective assistance of counsel claims raised in his post-trial matters overlap with his assignment of error and sworn declaration.  While we specifically address several of these claims, the *Dubay* court may consider all the factual and legal bases for appellant's claims of ineffective assistance of counsel upon remand.

The substance of the email reads in its entirety as follows:

> [M], re Tovar appeal: I screwed up crossing CW.[3]  I, alone was ineffective.  Let's talk how best to present issues on appeal, including pretrial issues.  Even though I think I came out on top on all pretrial issues, my methodology can help lay the foundation for ineffective assistance crossing CW and reversal.  Let's talk [M]onday.  Don't want to drag you into it, but [I] lost respect for the military 40 years ago, so I'm not concerned with reversal for ineffective assistance.  FYI, not sour grapes, I received an honorable discharge at 21, 4 years service, E5.  I served very honorably, but what I witnessed was a disgrace.  My bad for not being timely prepared.  I believed battle stations were [T]uesday, not [M]onday.

Appellant also asks us to consider an unsworn memorandum for record (MFR) by appellant's post-trial defense counsel summarizing a conversation with the civilian defense counsel.  (Appellant appears to have been assigned new post-trial counsel).  The MFR recounts a conversation between military counsel and civilian defense counsel that occurred two to three months prior to the date of the MFR.  The substantive paragraphs of the MFR are as follows:

> 2.  During this conversation [the CDC] told me he was ineffective in representing PVT Tovar-Chavez because he failed to cross[-]examine the victim effectively.  He went on to say it was his first military trial and he did not realize the victim would take the stand the first day.  As a result, he did not have any notes from her Article 32 testimony with him and was completely unprepared to proceed.  Additionally, he did not have the Article 32 testimony transcribed.
>
> 3.  He did not ask the Military Judge for a delay.

---

[3]  In his brief, appellant notes that "CW" are not the initials of the victim or any other witness in the case.  Appellant suggests that this misnaming of the victim is further evidence that the CDC was unprepared for trial.  Given the context, we are certain that CW is an abbreviation for "complaining witness."  Even in his affidavit to this court submitted on appeal, the CDC continues to use "CW" to refer to the victim.

Both parties on appeal also ask us to consider the audio recording of the Article 32, UCMJ, preliminary hearing. Presumably, this is a reference to a CD included in the allied papers labeled "US v. Tovarchavez I.O. copy." No one has authenticated the audio recording or claimed that it is an accurate and complete recording of the hearing.

In resolving the issue of ineffective assistance of counsel presently before this court, we note that both parties ask us to rely on unauthenticated matter that is attached to the record of trial. That is, each party asks us to assume the authenticity of matter that, if it had been admitted at trial, would require at least some foundation. Indeed, as the Article 32, UCMJ, hearing occurred before the military judge was detailed to the case, and the R.C.M. 1105 matters were submitted after authentication, the military judge likely could not (even if asked) authenticate that such matters "accurately report[] the proceedings." R.C.M. 1104(a)(1). The military judge did not "preside" over a proceeding in which these matters were considered. R.C.M. 1104(a)(2). The parties on appeal have not stipulated to the authenticity of the documents. Further, neither party on appeal filed a motion for us to consider the documents.

In *United States v. Cade*, 75 M.J. 923, 928 (Army Ct. Crim. App. 2016) we defined what is the "record of trial on appeal." We found the President had answered this question when he defined the "contents" of the record of trial in R.C.M. 1103(b)(2). *Id.* Allied documents and other matter "attached" to the record of trial are not part of the record of trial. *Id.*; *See* R.C.M. 1103(b)(3). Neither the military judge nor anyone else has certified or authenticated matters "attached" to the record as being accurate. *See* R.C.M. 1104. In *Cade*, we required that matter from outside the record of trial must be sworn by someone with personal knowledge. 75 M.J. at 930.

The problem with considering unsworn unauthenticated matter that was never subjected to adversarial testing should be obvious. Both parties (and recently crime victims) have broad authority to unilaterally attach matters to the record of trial (the accused in his submission of R.C.M. 1105 matters and the government in assembling the record and determining which allied papers to include). *See* R.C.M. 1103(b)(1). The Military Rules of Evidence do not–in the main–apply to submission of matters at Article 32, UCMJ, hearings or in post-trial. *See* Military Rule of Evidence 1101. Absent a stipulation by the parties, matter submitted to the court for consideration that is not part of the authenticated record of trial should be accompanied by a sworn declaration that the matter is what a party says it is.

Confusion on this issue perhaps stems from the fact that this court *does* consider post-trial matters in determining the appropriateness of the sentence. Our superior court has clearly said so. *See United States v. Boone*, 49 M.J. 187, 192 (C.A.A.F. 1998). To forestall needless motion practice, our local rules allow for an

appellant to request in the appellant's brief that we consider the post-trial submissions.  However, our sentence appropriateness review is a separate endeavor from our determination of whether there was legal or factual error in the trial.  "It is inappropriate to base an appellate opinion on assertions dehors the record." *United States v. Matthews*, 68 M.J. 29, 41 (C.A.A.F. 2009) (citing *United States v. Crouch*, 566 F.2d 1311, 1316 (5th Cir. 1978) (internal ellipses omitted)).  For example, an appellant could rightly cry foul if we were to affirm a finding as correct in law because (at least in part) of a factual assertion made in a crime victim's submission under R.C.M. 1105A.

However, *Boone* itself distinguishes between Courts of Criminal Appeals' review of sentences as being appropriate and determinations as to whether the findings and sentence are correct in law and fact.  49 M.J. at 193.  The Court of Appeals for the Armed Forces (CAAF) stated that "[w]e have recognized that there are legitimate and salutary reasons for the now-Court of Criminal Appeals to have the discretion to obtain evidence by affidavit, testimony, stipulation, or a factfinding hearing, as it deems appropriate." *Id.*  Except for a stipulation (which requires agreement by both parties), at each instance listed by the CAAF the matter appears to be coming to the court by way of oath or sworn declaration.

Thus, our superior court has not required post-trial hearings to resolve conflicting accounts created by unsworn submissions.  *See United States v. Lofton*, 69 M.J. 386, 391 (C.A.A.F. 2011) (convening authority not required to order post-trial hearings based on unsworn unsubstantiated statements).

Likewise, while we do not doubt the integrity of counsel,[4] our superior court has made it clear that we cannot consider court filings to be the equivalent of sworn declarations.  *United States v. Lewis*, 42 M.J. 1, 4 (C.A.A.F. 1995) ("The question remains whether the Army court erred by treating defense counsel's motion as the "functional equivalent" of an affidavit. We hold that it was error . . . .").  That is, even assuming that appellate counsel had personally verified in their briefs that the allied papers they wish us to consider are what they say they are, we cannot treat a brief as if it were an affidavit.

Normally, we need not remand for factfinding based on conflicts created by an unsworn unauthenticated document.  *See United States v. Gunderman*, 67 M.J.

---

[4] Here, this is not merely a technicality as the CDC appears to dispute the accuracy of some of the words attributed to him in the R.C.M. 1105 matters – at least in part. The government submitted a sworn affidavit from the CDC.  The CDC stated that the matter quoted in appellant's brief was not a verbatim recitation of what he had said. That is, to some greater or lesser extent he appears to dispute the accuracy of the words attributed to him in the email or the MFR.

683 (Army Ct. Crim. App. 2009). However, for unrelated reasons discussed below, we remand this case for factfinding. Accordingly, while we have significant concerns that the parties view the record on appeal differently than we do, for reasons of judicial economy it is best to dispose of these concerns by wrapping them into a *DuBay* hearing where these issues can be addressed by the trial court.

*2. Was counsel ineffective for failing to cross-examine SPC JR on prior statements?*

Setting aside the issues raised by appellant in reliance on the unsworn matters, appellant also submitted a sworn personal affidavit. In the affidavit, appellant asserts he had three post-assault conversations with SPC JR in which she made exculpating statements.

First, appellant asserts that the day after the offense of which he stands convicted he had a Facebook conversation with SPC JR. He asserts that in the conversation SPC JR affirmatively stated she was not upset by appellant's conduct. Rather, she stated she was upset because she had cheated on her boyfriend. Appellant states he told his defense counsel about this conversation but his counsel "never sought a copy of this online conversation from me, from SPC JR, or from Facebook directly."

Appellant's counsel responds that the conversation in question would have "corroborated [SPC JR's] allegations of rape and would not have been prudent to introduce into the trial." Although unstated directly, we infer from this statement that the CDC had discussed the Facebook exchange with appellant. However, and citing to his trial notes, the CDC averred that his pretrial discovery found that the Facebook conversation had been deleted. He also disagrees with the substance of the conversation and states that the panel would have inferred rape from SPC JR's statement that she was upset.

The affidavits both agree that appellant and his counsel discussed the Facebook conversation. The CDC also agrees with appellant's assertions that he had not expected to cross-examine SPC JR on the first day of trial. The affidavits part ways on 1) whether the CDC attempted to get a copy of the Facebook conversation; 2) whether the conversation was deleted; and 3) what was said in the Facebook conversation.

We are not allowed to make credibility determinations on the basis of conflicting affidavits when resolving collateral claims of ineffective assistance of counsel. *United States v. Ginn*, 47 M.J. 236, 243 (C.A.A.F. 1997).

In *Ginn*, the CAAF outlined five principles to guide this court when to order a factfinding hearing. *Id.* at 248. Most on point is the first, which stated that "if the facts alleged in the affidavit allege an error that would not result in relief even if

6

any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis." *Id.*

Here, we cannot determine one way or the other whether, assuming appellant's factual assertions are true, appellant received effective assistance of counsel. Accordingly, a factfinding hearing is necessary. To prevent extended appellate process, to ensure appellant's claims of error are given adequate consideration, and for reasons of judicial economy, we direct a *DuBay* hearing to make appropriate factual and legal determinations on appellant's claim of ineffective assistance of counsel generally. That is, while this one dispute regarding a Facebook conversation is what necessitates a factfinding hearing, the *DuBay* court may consider all the factual and legal bases for appellant's claims of ineffective assistance of counsel.

### B. Mistake of Fact

Appellant asked the panel for an instruction on the defense of mistake of fact. The military judge denied the request. Accordingly, any error is preserved for appeal.

A military judge has an affirmative duty to instruct on special defenses reasonably raised by the evidence. R.C.M. 920(e)(3). "The test for determining whether an affirmative defense of mistake of fact has been raised is whether the record contains some evidence of an honest and reasonable mistake to which the members could have attached credit if they had so desired." *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003). Put differently, an instruction on a defense is not required if no reasonable panel member could find the defense applicable. *United States v. Schumacher*, 70 M.J. 387, 389-90 (C.A.A.F. 2011) (stating that the test is similar to the test for legal sufficiency).

After making verbal and non-verbal rejections of appellant's advances SPC JR testified to an aggressive struggle on her bed. As appellant tried to pull SPC JR's sweat pants off, SPC JR pulled them back up. This continued for some time, until appellant overpowered SPC JR. He then assaulted her by putting his penis in her vagina. When done, appellant refused to get off SPC JR until she kissed him.

Appellant did not testify. Accordingly, the only evidence regarding the assault came from SPC JR. There were no "mixed messages" from which a mistake of fact could occur. *See United States v. DiPaola*, 67 M.J. 98, 102 (C.A.A.F. 2008). There is no evidence to which the members could have attached credit that there was a reasonable mistake of fact as to consent. The assault described by SPC JR was, in every which way, objectively non-consensual.

Additionally, we find no evidence appellant honestly possessed an innocent state of mind. We recently addressed this issue in *United States v. Kelly*, where we said:

> An accused is not required to testify to establish a mistake of fact defense. *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1999). However, to warrant an instruction on the mistake of fact defense there must be "some evidence of an honest and reasonable mistake to which the members could have attached credit if they had so desired." *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003).
>
> In other words, there is no per se requirement an accused testify to establish a mistake of fact defense, but evidence the accused honestly and reasonably believed the victim had consented must come from somewhere. In many cases, the only source of admissible evidence about the accused's subjective belief the victim consented may well be from the accused himself.

__ M.J. __ , 2017 CCA LEXIS 453, at *30-31 (Army Ct. Crim. App. 5 Jul. 2017).

To be clear, we agree with appellant that there need not be direct evidence of an honest belief. Just as the government often proves an accused's intent to commit an offense by inference, the defense can establish some evidence of an honest mistake of fact to consent by inference. *See* Dep't of Army, Pam 27-9, Legal Services: Military Judges' Benchbook, para. 7-3, n. 2 (10 Sept. 2014). Here, appellant points us to numerous pre-assault interactions between SPC JR and appellant, to include the conduct that was charged, but of which appellant was acquitted. Looking at the evidence in a light most favorable to appellant, one could infer that on the day of the assault appellant went to SPC JR's barracks room honestly believing they might engage in consensual intercourse. However, once in the room and being rebuffed both verbally and non-verbally, the reasonableness of the inference disappears. That is, as the evidence was that SPC JR manifestly rejected appellant's advances, at the time of the offense there was no evidence that appellant honestly believed she was consenting or that such a belief would be reasonable.

### C. *United States v. Hills*

The military judge gave the panel in this case an instruction that was for all substantive purposes identical to the instruction that the CAAF found to be error in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). However, although discussed

8

more than once, trial defense counsel offered no objection to the instruction and ultimately stated he had "no objection" to the instruction.

We specified the issue of whether appellant forfeited or waived any objection to the instructions when he stated he had no objection to the instruction he now challenges on appeal. In *United States v. Hoffman*, we determined a statement of "no objection" to instructions that are challenged on appeal constitutes an affirmative waiver of the issue. __ M.J. __ , 2017 CCA LEXIS 425, at *15 (Army Ct. Crim. App. 27 Jun. 2017). We cited the Fourth Circuit in *United States v. Smith*, for the proposition that a statement of "no objection" is an "intentional relinquishment or abandonment of a known right." No. 97-4904, 1998 U.S. App. LEXIS 22673, at *3-4 (4th Cir. Sep. 16, 1998). Citing almost every circuit court of appeals we stated that "[a]bsent evidence to the contrary, we presume that counsel are competent under *Strickland v. Washington*, 466 U.S. 668, 690 (1984), thus defense counsel stating that he or she has "no objection" is a purposeful decision." *Hoffman*, __ M.J. __ , 2017 CCA LEXIS 425, at *15.

This case is perhaps distinguishable from *Hoffman*. *Hoffman* involved several additional opportunities for the accused to object to the errant instruction, to include written motions practice. *Id*. at *18-20. Our decision in *Hoffman* was conditioned on that being a case "where appellant 'was fully aware of the [issue], and he had numerous opportunities to contest its admission and use.'" *Id.* (citing *United States v. Swift*, 76 M.J. 210, 217 (C.A.A.F. 2017)).

However, we need not decide whether the issue was waived because even if the issue was not waived we still would not find plain error. Appellant has not met his burden of establishing material prejudice to a substantial right. *United States v. Paige*, 67 M.J. 442, 449 (C.A.A.F. 2009) (To establish plain error, appellant must show: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights).

Appellant argues that because any error violated appellant's presumption of innocence and right to be convicted only by proof beyond a reasonable doubt, the error materially prejudiced appellant's substantial rights. The first two subparts of appellant's brief on prejudice address the gravity of the error.

In our view, this misunderstands our prejudice analysis. A prejudice analysis is separate from the finding of error. As the Supreme Court stated in *Puckett v. United States*:

> Any trial error can be said to impair substantial rights if the harm is defined as "being convicted at a trial tainted with [fill-in-the-blank] error." Nor does the fact that there is a "protected liberty interest" at stake render this case

9

> different. That interest is always at stake in criminal cases. Eliminating the third plain-error prong through semantics makes a nullity of *Olano*'s instruction that a defendant normally "must make a specific showing of prejudice" in order to obtain relief.

556 U.S. 129, 142 (2009) (internal citations omitted, bracketed language in original). In other words, absent structural error, proof of error does not *ipso facto* prove prejudice. If it did, our plain error test would be effectively reduced to only two prongs. If a *Hills* error were structural, we presume our superior court would have so stated, given the strong presumption against structural errors, and further would not have bothered to test for prejudice in that case, which it did. 75 M.J. at 358.

Appellant also argues that this case was not strong. The evidence consisted of the credible testimony of SPC JR as well as post-assault apologies that the government successfully presented as evidence of consciousness of guilt. Appellant correctly notes the lack of corroborating physical or forensic evidence.

Our understanding of the proper framework for determining prejudice for *Hills* violations continues to develop as we consider each new case. A candid review of our cases considering the matter shows a progression in our analyses as we consider the facts of each new case and absorb binding and persuasive authority from our superior and sister courts. *See Hoffman*, __ M.J. __ , 2017 CCA LEXIS 425, at *12-13 (surveying recent decisions of *Hills* violations). For this panel, we have viewed the danger from an improper propensity instruction to be greatest when issues of propensity are clearly at play.

In *United States v. Guardado*, we found a low likelihood of prejudice because the evidence that the accused had committed the other misconduct was not credible. 75 M.J. 889 (Army Ct. Crim. App. 2016), pet. granted, 76 M.J. 166 (C.A.A.F. 2017). "The likelihood of prejudice from propensity evidence is greatest when the evidence is solid and credible. In other words, weak evidence offered to show propensity poses less danger of contributing to the verdict." *Id.* at 898.

Similarly in *United States v. Moore*, this panel was presented with a case in which there was substantial evidence as to one offense, but less convincing evidence as to the other offenses. ARMY 20140875, 2017 CCA LEXIS 191 (Army Ct. Crim. App. 23 Mar. 2017), pet. granted, 76 M.J. __ , 2017 CAAF LEXIS 630 (C.A.A.F. 22 June 2017) (order). We assessed that such a situation created a danger that strong evidence of one offense may bleed over to prove the offenses for which the evidence was not so strong. *Id*. at *10-14. Accordingly, we set aside all but the one offense. *Id.*

In *United States v. Denson*, we set aside all the subject offenses because of concerns about propensity. ARMY 20150137, 2017 CCA LEXIS 564 (Army Ct. Cr. App. 18 Aug. 2017). In that case, the government presented evidence that several charged victims were assaulted in a manner that was arguably similar. An improper propensity inference was a rational response to these facts. *Id.* at *3-5. In such a case, an instruction that tells a panel they may infer that which there may have been a natural instinct to do anyway compounds the danger of an improper instruction.

Most importantly, however, our analysis of prejudice for *Hills* violations is framed by the appellate posture of the issue on appeal.[5] In cases of preserved error, the burden falls on the government and the burden is proof of harmlessness beyond a reasonable doubt. *Hills*, 75 M.J. at 357. In cases of unpreserved error, the burden is on appellant to show material prejudice to a substantial right. *Hoffman*, __ M.J. __ , 2017 CCA LEXIS 425, at *30-31.

Here, we cannot find a specific showing of prejudice in a case where propensity was not argued or discussed. Indeed, the absence of an objection by the defense and argument by the trial counsel is indicative of the low impact of propensity at the trial.

For the reasons stated in *Hoffman* we find appellant has met the first two prongs of a plain error analysis and has demonstrated that the *Hills* instruction in this case was obvious error. *Id.* at *26-30. We, however, do not find appellant has met his burden of establishing prejudice, and therefore do not find plain error.

## CONCLUSION

In light of this court's inability to resolve the conflicting affidavits presented on appeal, the record of trial is returned to The Judge Advocate General for such action as is required to conduct a *DuBay* hearing on whether trial defense counsel were ineffective in their representation of appellant at trial.

As noted in our discussion, although the need for a *DuBay* hearing primarily results from the conflicting affidavits of appellant and his civilian defense counsel regarding the Facebook conversation between SPC JR and appellant, the *DuBay* military judge shall consider all of appellant's claims of ineffective assistance of counsel. However, the military judge is required to consider only those claims of ineffective assistance of counsel that have already specifically been identified by appellant's briefs, *Grostefon* materials, and sworn affidavit. The Clerk of Court is

---

[5] In *Guardado* and *Moore* we treated the *Hills* issue as preserved based upon the government's concession or the parties framing of the issue. *Guardado*, 75 M.J. at 905; *Moore*, 2017 CCA LEXIS 191, at *6.

TOVARCHAVEZ—ARMY 20150250

directed to provide a copy of these materials to the *DuBay* judge. The military judge at the hearing will make findings of fact and conclusions of law as appropriate.

Upon conclusion of the *DuBay* hearing, the record will be returned to this court for further review.

Senior Judge MULLIGAN and Senior Judge CAMPANELLA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court